THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE POLLARDS, Defendant-Appellant.

First District (2nd Division)   No. 1—05—0451

Opinion filed August 15, 2006.

Michael J. Pelletier and Steven W. Becker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James Fitzgerald, Matthew Connors, and Himika Shergill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Following a jury trial, defendant Willie Pollards was convicted of possession of a stolen motor vehicle and sentenced to five years in prison.

On appeal, defendant contends the trial court erred in failing to instruct the jury on the definitions of stolen property and theft, in accord with Illinois Pattern Jury Instructions, Criminal, Nos. 13.33G and 13.01 (4th ed. 2000) (hereinafter IPI Criminal 4th). Alternatively, defendant contends his counsel was ineffective for failing to request the instructions. We reverse and remand.

FACTS

At trial, Harry Harrison testified he owned and drove a taxicab with license plate number 2723 TX. The number assigned to the cab was 2723. On August 1, 2004, Harrison pulled into a gas station on the corner of Fullerton and Western Avenues in Chicago. He went inside to pay for the gas and left his keys on the passenger seat. When he returned, he saw someone driving away in his cab. He did not see the driver. After the gas station owner called the police, Harrison called the American United Cab Company to report the stolen cab. He authorized the company to offer a $100 reward.

Charles Turner, an American United dispatcher, said he sent out four messages directing other cabdrivers to look for the missing cab. He sent a fifth message announcing a $100 reward for reporting the location of the cab. Following the fifth message, Turner received "an instant response from Vehicle 2723" saying the caller had found the cab. The caller said the cab was at Carol and Sacramento. Turner heard wind and traffic in the background. Turner told the caller to stay with the vehicle and said someone would be there shortly with the reward. He then dialed 911 and reported the cab's location to the police.

Turner contacted vehicle 2723 and repeated his direction to stay with the cab. A few minutes later, the person called back and said he had thought about the situation and wanted $200 for the reward. Turner told him it was no problem. He said someone would be right there with the money.

Chicago police officer Darlene Rodriguez said she received a call about a stolen taxicab being located. She and her partner were wearing civilian clothes and driving in an unmarked car. When the officers found the cab, it was located about 20 blocks from where it was stolen. The defendant was sitting inside the cab in the driver's seat. He exited the cab with the keys in his hand. Defendant asked the officers where his reward was. The officers informed defendant of his rights and placed him into custody. Harrison identified the cab at the police station.

Officer Ranada Keating said she had a conversation with the defendant at the station. He said if he had not asked for $200, they would not have called the police. He said he had a "rock" habit, meaning a crack cocaine habit. He said $100 was a lot of money.

The defendant testified he was leaving a scrapyard on August 1, 2004, when he noticed a cab with its passenger door open and its windows down. The engine was not on, but the auxiliary lights were on. There were papers and things "thrown all over the place" inside the cab. He thought it looked unusual. As he approached the cab, the defendant heard an announcement on the CB radio offering a $100 reward. He picked up the radio and told the dispatcher the location of the cab. He waited about 20 minutes, then called the dispatcher back and asked for $200. The dispatcher said that was fine and told him to stay there, that someone was on the way. Defendant said he did not steal or move the cab. He did not threaten anyone when he asked for $200.

The State introduced into evidence proof of defendant's prior burglary conviction. Following closing arguments, the jury found defendant guilty of possession of a stolen motor vehicle. The court sentenced defendant to five years' imprisonment.

DECISION

The court instructed the jury in accord with IPI Criminal 4th Nos. 23.35 and 23.36:

"A person commits the offense of possession of a stolen or converted vehicle when that person possesses a vehicle when not entitled to possession of the vehicle and when knowing it to have been stolen or converted." IPI Criminal 4th No. 23.35.

* "To sustain the charge of possession of a stolen or converted vehicle, the State must prove the following propositions:

First: That the Defendant possessed of a vehicle [sic]; and

Second: That the Defendant was not entitled to possession of the vehicle; and

Third: That the Defendant knew that the vehicle was stolen or converted.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty.

If you find from your consideration of all of the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 4th No. 23.36.

The Committee Note to IPI Criminal 4th No. 23.35 states:

"When the defendant is charged with possessing stolen vehicles or essential parts of vehicles, give Instructions 13.33G (Definition of Stolen Property) and 13.01 (Definition of Theft). Because stolen property is defined as 'property over which control has been obtained by *theft*,' *the definition of theft must accompany the definition of stolen property.* (Emphasis added.) See *People v. Cozart*, 235 Ill. App. 3d 1076, 601 N.E.2d 1325, 176 Ill. Dec. 627 (2d Dist. 1992). Although the court in *People v. Bradley*, 192 Ill. App. 3d 387, 548 N.E.2d 743, 139 Ill. Dec. 358 (1st Dist. 1989), held that the word 'stolen' implies the definition of theft and the intent to permanently deprive—and that the jury therefore *need not* be instructed on those terms—*Bradley* did not hold it impermissible or error to do so. Therefore, in part to comply with *Cozart*, the Committee decided that the instructions should include the definitions of stolen property and theft." (Emphasis added.) IPI Criminal 4th No. 23.35, Committee Note, at 214.

The Committee Note to IPI Criminal 4th No. 23.36 states:

"When a defendant is charged with possession of a stolen or converted vehicle and it is alleged, or the evidence shows, that he participated in the actual taking of the vehicle, it may be necessary to include the phrase 'intent to permanently deprive' in the definition and issues instructions. See *People v. Cramer*, 85 Ill. 2d 92, 421 N.E.2d 189, 51 Ill. Dec. 681 (1981); *People v. Washington*, 184 Ill. App. 3d 703, 540 N.E.2d 1014, 133 Ill. Dec. 148 (2d Dist. 1989). But see *People v. Bradley*, 192 Ill. App. 3d 387, 548 N.E.2d 743, 139 Ill. Dec. 358 (1st Dist. 1989), wherein it was held that the word 'stolen' implies an intent to permanently deprive." IPI Criminal 4th No. 23.35, Committee Note, at 217.

Despite the language in the Committee Notes, the court did not instruct the jury on the definitions of stolen property (IPI Criminal 4th No. 13.33G) or theft (IPI Criminal 4th No. 13.01). Neither the State nor defense counsel requested the instructions, nor did defense counsel object to the failure to give IPI Criminal 4th No. 13.33G or 13.01.

The absent instructions would have defined stolen property as "property over which control has been obtained by theft" (IPI

Criminal 4th No. 13.33G), and theft as knowingly obtaining or exerting unauthorized control over property with the intent "to deprive the owner permanently of the use or benefit of the property" (IPI Criminal 4th No. 13.01).

Defendant contends we should review the court's failure to give the instructions under the plain error standard. We need not decide whether plain error occurred because we find defense counsel was ineffective in failing to request the instructions.

In analyzing a claim of ineffective assistance of counsel, we use the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and recognized by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). We ask: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether defendant was prejudiced. To satisfy the second prong, the defendant must show a reasonable probability that, but for defense counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694-95, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2068-69. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Under the first *Strickland* prong, counsel's failure to request the instructions was an error serious enough for us to say that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Under the circumstances in this case, the Committee Notes for IPI Criminal 4th Nos. 23.35 and 23.36 plainly require the instructions for the definitions of stolen property and of theft.

The language in the note for IPI Criminal 4th No. 23.35 is mandatory, *i.e.*, "*give* Instructions 13.33G (Definition of Stolen Property) and 13.01 (Definition of Theft)," and "the definition of theft *must* accompany the definition of stolen property." (Emphasis added.) IPI Criminal 4th No. 23.35, Committee Note, at 214.

The note for IPI Criminal 4th 23.36 states that where "it is alleged, or the evidence shows, that [defendant] participated in the actual taking of the vehicle, it *may be necessary* to include the phrase 'intent to permanently deprive' in the definition and issues instructions." (Emphasis added.) IPI Criminal 4th No. 23.36, Committee Note, at 217. Although the note says "*may* be necessary," we believe the instruction *was* necessary under the factual circumstances. The prosecutor alleged during his opening statement and closing argument that defendant was the person who stole the taxicab and drove off with it. The prosecutor argued defendant was driving the car when he

called the dispatcher, based on Turner's testimony that he heard traffic noise and wind in the background while he was talking to the defendant. The State's contention that defendant's intent to permanently deprive the owner of his vehicle was not at issue in this case is belied by the prosecutor's approach at trial. The State made it an issue when it introduced evidence and argued that defendant had stolen the vehicle.

In *People v. Cozart*, 235 Ill. App. 3d 1076, 601 N.E.2d 1325 (1992), the trial court refused three instructions offered by the defendant. The instructions included the definitions of theft, the phrase "exerts control," and the phrase "permanently deprive." *Cozart*, 235 Ill. App. 3d at 1079. The defense theory was that defendant took the car, but either the car was taken with the driver's permission or, at worst, that the defendant took the car for a joyride. *Cozart*, 235 Ill. App. 3d at 1079. A person may be charged with possession of a stolen motor vehicle even if he is the one who has stolen it. In such a case, the "defendant would have to *know* he had stolen the vehicle, that is, he would have to have stolen it before he could be found guilty." (Emphasis added.) *Cozart*, 235 Ill. App. 3d at 1080, citing *People v. Cramer*, 85 Ill. 2d 92, 100, 421 N.E.2d 189 (1981). The court held the trial court erred in refusing the proffered instructions. Because the evidence showed defendant was the person who stole the car, the State was required to prove intent to permanently deprive the owner of the use of her car. *Cozart*, 235 Ill. App. 3d at 1081.

In *People v. Washington*, 184 Ill. App. 3d 703, 708, 540 N.E.2d 1014 (1989), the court held intent to permanently deprive is not an element of the offense of possession of a stolen or converted motor vehicle. However, where a conviction for possession of a stolen motor vehicle is predicated on possession by the same person who committed the theft, proof of the person's mental state inconsistent with that required for theft would prevent conviction. *Washington*, 184 Ill. App. 3d at 708, citing *Cramer*, 85 Ill. 2d at 100.

The State relies on *People v. Bradley*, 192 Ill. App. 3d 387, 548 N.E.2d 743 (1989), where the defendant argued the jury should have been instructed on intent to permanently deprive. The court held the defendant waived the issue by failing to tender the instruction. *Bradley*, 192 Ill. App. 3d at 393. The court went on to consider the merits of the argument and found that the concept of a stolen car implies the perpetrator of the crime intended to permanently deprive the owner of its use and benefit, and no additional definition is necessary. *Bradley*, 192 Ill. App. 3d at 393-94. The court held this is especially true where the Illinois pattern jury instructions do not suggest that an additional definition is necessary. *Bradley*, 192 Ill. App. 3d at 393.

It is obvious the Committee Notes for IPI Criminal 4th Nos. 23.35 and 23.36 were changed in response to the *Cozart* and *Bradley* decisions. The circumstances of this case are different from those in *Bradley*. In that case, the owner of the car did not know the defendant or where he lived, and the defendant was still using the car three days after it was reported stolen. *Bradley*, 192 Ill. App. 3d at 389-91. Here, the defendant called about the reward a short time after the cab was taken.

Defense counsel recognized the defendant's intent was an issue in the case. During final argument, counsel said:

> "They haven't proven that it was a stolen vehicle. They haven't proven either that he was intending to keep this vehicle and deprive anybody else from getting it."

Whether the defendant possessed the intent to deprive the owner permanently of the use and benefit of the cab was made a pivotal issue in this case. His intent was not clearly established. Even a casual reading of the Committee Notes to IPI Criminal 4th Nos. 23.35 and 23.36 should have led defense counsel to the realization that the jury required guidance on the issue of the defendant's intent. Had counsel offered the instructions pursuant to the mandate of the Committee Notes, we are confident they would have been given. Trial counsel has a duty to conduct both factual and legal investigations on behalf of a client. *People v. Montgomery*, 327 Ill. App. 3d 180, 185, 763 N.E.2d 369 (2001). This court has held a defense counsel's ignorance of the law may be objectively unreasonable and fall below the standard of representation required by *Strickland* where that ignorance results in harm to the client. See *People v. Siedlinski*, 279 Ill. App. 3d 1003, 1005-06, 666 N.E.2d 42 (1996); *People v. Kozlowski*, 266 Ill. App. 3d 595, 601, 639 N.E.2d 1369 (1994). This is such a case.

As for the second *Strickland* prong, the State contends the defendant was not prejudiced by the alleged error because the defense theory was that the defendant never had possession of the car. True, the issue of possession was not close. However, the State made an issue of defendant's intent to permanently deprive when it alleged at trial that defendant stole the car. On that issue, the evidence was close. There is a reasonable probability the trial would have had a different outcome had the jury received the instructions on the definitions of stolen property and of theft. That probability is sufficient to undermine confidence in the outcome of the case.

Accordingly, we reverse defendant's conviction and sentence.

Because the evidence is sufficient to support a guilty verdict, we remand for a new trial.

Reversed and remanded.

GARCIA, P.J., and HALL, J., concur.