No. 2--00--1301

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF    ) Appeal from the Circuit Court

ILLINOIS,                     ) of Winnebago County.

                              )

Plaintiff-Appellee,      )

                              )      

v.                            ) No. 99--CF--1736         

                              ) 

JAMES K. SANTOS,              ) Honorable                  

                              ) Kathryn E. Zenoff,

Defendant-Appellant.     ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendant, James K. Santos, appeals his conviction of the offense of aggravated criminal sexual abuse in that he, over 17 years of age, penetrated the vagina of the victim, T.K., at least age 13 but less than 17 years old, with his penis, and he was at least 5 years older than the victim.  720 ILCS 5/12-16(c) (West 1998). We reverse and remand.

The charges against defendant arise from an incident that occurred during the early morning hours of May 9, 1999.  At this time, defendant is alleged to have penetrated the vagina of T.K., who was between the ages of 13 and 17, while he was over 17 years of age and at least 5 years older than T.K.  In his defense, defendant asserted that, while having sexual intercourse with T.K., she told him for the first time that she was 16 years old, at which time he immediately ceased the sexual activity.

Prior to trial, defendant filed a motion 
in limine
 seeking permission to cross-examine the victim regarding inconsistent statements she made during the investigation.  The motion asserted that T.K. submitted to a rape kit and denied to hospital personnel any sexual activity within 72 hours of the alleged assault.  After it was determined that seminal fluid and pubic hair were found in T.K.'s underwear, she admitted to police that she had had a sexual encounter with a third party within 72 hours of the alleged assault.  Defendant sought to introduce evidence of T.K.'s contradictory statements to impugn her credibility.  In response, the State filed a motion 
in limine
 to prohibit defendant from making any reference to T.K.'s past sexual activity or reputation pursuant to the rape shield statute.  725 ILCS 5/115--7(a) (West 1998).   

The trial court ruled that the rape shield statute prohibited the admission of the evidence proposed by defendant.  Defendant was prohibited from cross-examining the victim concerning the inconsistent statements she made to hospital personnel and the police.

The State's main witness was the victim, T.K.  On May 9, 1999, she was 16 years old.  On May 8, 1999, she purchased a fifth or a half-gallon of vodka and arrived at the home of Jason Ganus at 7 or 8 p.m.  T.K. consumed vodka and orange juice with friends for one or two hours.  The group left the Ganus home when Jason's parents intervened.

T.K. and a female friend walked to the home of Angie Enna, a 25-year-old woman who lived in a housing complex known as the Fairgrounds.  There were several other persons present, including

defendant.  T.K. accompanied defendant to a liquor store, where they obtained more alcohol.

The group returned to the party and consumed more alcohol.  When defendant asked T.K. her age, she stated that she was 16.  T.K. and defendant drove around Rockford for four or five hours in defendant's car.  They pulled into a driveway of a home in a residential area and began to kiss.  T.K. informed defendant that she wanted to go back to the party because she did not feel well.  Defendant and T.K. began to drive around in defendant's car, and defendant pulled into a parking lot.

Defendant began to kiss T.K.  When T.K. stated that she did not want to kiss, defendant grabbed her shoulder and "yanked" her from the passenger seat into the backseat.  Defendant grabbed her arms and tried to kiss her.  When she protested, defendant said that he thought she "wanted this" and pulled her pants down.

T.K. screamed as defendant removed her pants and underwear.  He thrust his fingers inside of her vagina.  He removed his own pants and attempted to place his penis inside her vagina.  When defendant placed his penis into T.K.'s vagina, she pushed him off her.  They returned to the front seat, got dressed, and drove to an Amoco gas station, where T.K. threw up.  Defendant washed his car, and he and T.K. returned to the party at the Fairgrounds.  T.K. did not report the attack to anyone at the Amoco station, call for help, or attempt to flee the scene.

T.K. was examined in the Rockford Memorial Hospital emergency room by Chrislyn Senneff, R.N., and Dr. Aldred.  Nurse Senneff observed an abrasion to T.K.'s cheek that appeared to be new and an abrasion to her buttocks.  She did not note any vaginal lacerations.  T.K. told nurse Senneff that defendant penetrated her rectum with his fingers. 

America Smith testified that she was "hanging out" at the Fairgrounds party.  When America and her boyfriend, Joe Ferguson, went to a gas station at midnight,  T.K. was sitting in defendant's car listening to the radio.  At approximately 5 a.m., America was awakened when T.K. and defendant returned to the party.  T.K. was crying.  T.K. told America and a friend, Tiffany Reaves, that she had been raped.

Rockford police officer Rose Mary Mathews testified that she was called to the Rockford Memorial emergency room on May 9, 1999, regarding a sexual assault.  Mathews took photographs of a scratch on T.K.'s jaw.

Officer Walter Felton of the Rockford police department testified that he spoke to defendant on May 18, 1999.  Defendant told Officer Felton that T.K. informed him she was 18 years old on the night in question.  While they were engaged in sexual intercourse, T.K. told defendant she was 16 years old.  Defendant was born on December 19, 1964.

Defendant testified in his case in chief.  On May 8, 1999, he attended a party at the Fairgrounds housing complex.  T.K. was present.  Defendant was not previously acquainted with T.K.

Defendant took T.K. and some other persons at the party to a liquor store.  T.K. told defendant she was 18 years old.  After obtaining alcohol from a liquor store and consuming it at the party, T.K. asked defendant if she could go for a ride with him.

T.K. and defendant drove around in his car listening to music.  They consumed more alcohol.  T.K. leaned over to defendant and kissed him.  Defendant parked the car in a residential area and began kissing T.K.  T.K. grabbed at defendant's leg and touched his penis through his clothing, and he fondled her breasts.  This activity lasted for approximately 15 to 20 minutes.  

T.K. voluntarily climbed into the backseat of defendant's car.  Defendant joined her in the backseat, where they kissed and fondled each other.  When T.K. tugged at defendant's pants in an attempt to unfasten them, defendant undressed.  T.K. undressed herself.  When defendant inserted his penis in T.K.'s vagina, she said to stop.  Defendant stopped immediately and denied that there was a struggle.  At this point, T.K. told defendant she was 16 years old.  Defendant stated that, if he had known T.K. was 16 years old, he would not have touched her. Defendant also denied placing his fingers in T.K.'s vagina or rectum.  

After the incident, T.K. and defendant drove around in his car.  While at an Amoco station, T.K. vomited.  Defendant purchased a soda for T.K.  When he returned, she was no longer in his vehicle.  Defendant found T.K. at the National Pride Car Wash.  She voluntarily entered his vehicle, and they returned to the Fairgrounds party.  T.K. went upstairs with America Smith.  After Joe Ferguson went upstairs, he told defendant that T.K. stated defendant tried to rape her.  

The jury was given the following issues instruction on the charge of aggravated criminal sexual abuse, without objection by defendant:

"To sustain the charge of aggravated criminal sexual abuse involving penetration, the State must prove the following propositions:

First Proposition: That the defendant committed an act of sexual penetration upon  T.K.; and

Second Proposition: That  T.K. was at least 13 years of age but under 17 years of age when the act was committed; and

Third Proposition: That the defendant was at least five years older than  T.K.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See Illinois Pattern Jury Instructions, Criminal, No. 11.62A (4th
 ed. 2000) (hereinafter IPI Criminal 4th).

The jury found defendant guilty of aggravated criminal sexual abuse involving penetration and proof that the victim was between ages 13 and 17 while defendant was at least 5 years older.  720 ILCS 5/12--16(c) (West 1998). Defendant was found not guilty of the remaining charges of criminal sexual assault (720 ILCS 5/12--13 (a) (West 1998)) and aggravated criminal sexual abuse involving sexual conduct and the use of force (720 ILCS 5/12--16(c)(1)(ii) (West 1998)).  Defendant was sentenced to a term of four years in prison.

We first address defendant's contention that he was denied a fair trial because the issues instruction posed to the jury did not reference the State's burden of proving that defendant could not have reasonably believed T.K. was 17 or older.  Defendant did not object to the issues instruction when it was offered, present an alternate instruction, or raise this issue in his posttrial motion.  To preserve an argument for appeal, both an objection at trial and a written posttrial motion raising the issue are required.  
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  The failure to object to a jury instruction waives the issue for appeal.  
People v. Booker
, 224 Ill. App. 3d 542, 555 (1992).  Defendant has waived consideration of this issue because he did not object to this instruction when it was given or raise this allegation of error in his posttrial motion.  

Under the plain error exception to the waiver rule (177 Ill. 2d R. 451(c)), substantial defects in jury instructions in criminal cases may be reviewed by the court despite the failure to make a timely objection, if the interests of justice require.  
People v. Thurman
, 104 Ill. 2d 326, 329 (1984). The plain error exception to the waiver rule permits a reviewing court to consider issues otherwise waived where (1) the evidence in a criminal case is closely balanced or (2) the error is so fundamental and of such magnitude the accused was denied a fair trial.  
People v. Lucas
, 151 Ill. 2d 461, 482 (1992);  134 Ill. 2d R. 615(a).

Certain instructions, such as the elements of the offense and the issues instruction, are essential to a fair trial.  The failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not adequately apprised of the State's burden of proof. 
People v. Reddick
, 123 Ill. 2d 184, 198 (1988).  In our view, the evidence in this case was closely balanced.  The failure to proffer an issues instruction that properly delineated the State's burden of proof, under the circumstances, constitutes plain error.  Therefore, we will review the issue raised by defendant on the merits.   

The purpose of jury instructions is to guide the jury in its deliberations and to help it reach a proper verdict through the  application of legal principles to the evidence.  
People v. Banks
, 287 Ill. App. 3d 273 (1997).  Every litigant is entitled to have the jury instructed on the law governing the case.  
Malek v. Lederle Laboratories
, 125 Ill. App. 3d 870, 872 (1984).  The instructions must be sufficiently clear so as not to confuse or mislead the jury.  
Malek
, 125 Ill. App. 3d at 872.   

According to Supreme Court Rule 451(a) (177 Ill. 2d R. 451(a)), juries in criminal cases must be instructed pursuant to the Illinois Pattern Jury Instructions unless the court determines that the particular instruction does not accurately state the law.  See 
People v. Haywood
, 82 Ill. 2d 540, 545 (1980);  
People v. Testin
, 260 Ill. App. 3d 224, 230 (1994).  A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence.  If there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury.  
People v. Crane
, 145 Ill. 2d 520, 526 (1991).  Very slight evidence upon a given theory of a case will justify the giving of an instruction.  
People v. Moore
, 250 Ill. App. 3d 906, 915 (1993). 

Here, defendant claimed, as an affirmative defense to the charge of aggravated criminal sexual abuse, that he reasonably believed T.K. was 17 years old or older.  To avail himself of this affirmative defense, defendant was required to produce some evidence at trial to demonstrate the existence of such a reasonable belief.  See 
People v. Kite
, 153 Ill. 2d 40, 44-45 (1992).

Not only did defendant present evidence in support of his affirmative defense, but the State also presented evidence sufficient to raise this issue.  At the time of the offense, T.K. was 16 years old and defendant did not know T.K. prior to the incident.  T.K. was consuming alcohol when defendant met her; she was at the apartment of a 25-year-old woman in the early morning hours; and she seemed free to stay either overnight or out until the early morning hours.  Additionally, the jury heard conflicting evidence from defendant and T.K. as to T.K.'s statements concerning her age prior to the sexual contact.  Therefore, defendant was entitled to have the jury instructed on this affirmative defense.

Although a separate instruction on the affirmative defense was given (IPI Criminal 4th
 No. 11.64), the issues instruction given did not reference the State's burden to disprove the affirmative defense.  The committee notes to the issues instruction for aggravated criminal sexual abuse (IPI Criminal 4th 
 No. 11.62A) state that, when a defendant is charged with this offense (720 ILCS 5/12--16(d) (West 1998)) and the defendant's defense that he reasonably believed the victim to be 17 or 16 years of age or older is raised by the evidence, the following instruction should be given as the final proposition:

"
Fourth Proposition
: That the defendant did not reasonably believe [T.K.] to be [(16) (17)] years of age or older." IPI Criminal 4th No.11.62A, Committee Note, at 565. 

The issues instruction given to the jury did not contain this fourth proposition.  Thus, the jury was not advised that, to convict defendant of the offense of aggravated criminal sexual abuse, the State had to prove beyond a reasonable doubt that he did not have a reasonable belief that T.K. was 17 years of age or older.  By omitting the fourth proposition, the jury was not properly apprised of the State's burden of proof.  Therefore, we determine that the failure to provide a proper issues instruction concerning the State's burden of proof for the offense of aggravated criminal sexual abuse deprived defendant of a fair trial. Therefore, we reverse defendant's conviction of aggravated criminal sexual abuse and grant defendant a new trial on this charge.  Due to our determination on this issue, it is unnecessary to address the issue of whether the State proved defendant guilty of the offense of aggravated criminal sexual abuse beyond a reasonable doubt, except for the purposes of double jeopardy.  
People v. Daniels
, 187 Ill. 2d 301, 310 (1999).  For this purpose, we determine that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  The testimony of the complainant, if believed, would have sustained the conviction.

In his brief, defendant contends that the trial court erred in excluding evidence of T.K.'s inconsistent statements concerning whether she had sexual intercourse with anyone other than defendant within 72 hours of submitting to a rape kit pursuant to the rape shield statute (725 ILCS 5/115--7 (West 1998)). We will address this issue on the merits since it is likely to arise at retrial.

The rape shield statute provides that, in prosecutions for aggravated criminal sexual abuse, when the commission of the offense involves sexual penetration or sexual conduct, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused when the evidence is offered by the accused on the issue of consent or the evidence is constitutionally required to be admitted.  725 ILCS 5/115--7(a) (West 2000). Defendant contends that evidence of T.K.'s contradictory statements to emergency room personnel and to the police concerning sexual contact with someone other than defendant within 72 hours of submitting to a rape kit was relevant to impugn the credibility of T.K.'s testimony that she informed defendant prior to the alleged assault that she was 16 years old.  He asserts that such evidence should have been admitted under the constitutional exception to the rape shield statute.

In 
People v. Grano
, 286 Ill. App. 3d 278 (1996), we interpreted the parameters of the rape shield statute.  There, we determined that the statute was not designed to preclude the admission of all evidence related to sex.  Instead, the legislative intent of the rape shield statute is to exclude evidence of actual sexual history or reputation of the victim, not evidence offered for the purpose of impeachment, even when that evidence relates to sex.  Thus, in 
Grano
, we held that the trial court improperly excluded evidence proffered by the defendant that the victim of an alleged sexual assault made prior inconsistent statements concerning sexual relations with adult men other than the defendant when that evidence was offered for the purpose of impeaching the victim's credibility on a material issue. 

Under the rationale of 
Grano
, the rape shield statute does not prohibit the introduction of evidence concerning T.K.'s  inconsistent statements to emergency room personnel and the police concerning sexual contact with a person other than defendant.  The offense at issue was aggravated criminal sexual abuse, in that defendant, being over the age of 17, penetrated the vagina of T.K., who was between the ages of 13 and 17, and defendant was at least 5 years older than T.K.  Defendant raised the affirmative defense of his reasonable belief that T.K. was over the age of 17, and there was conflicting evidence on this issue.  Defendant testified that, before his sexual encounter with T.K., she told him that she was 18 years old; he said he first learned she was 16 years old only after she stated that during the penetrating act.  In contrast, T.K. testified that she told defendant she was 16 years old before the sexual encounter.  Due to the nature of the evidence relating to defendant's affirmative defense, T.K.'s credibility was at issue.  Accordingly, the trial court misapplied the rape shield statute as a basis for excluding the evidence of T.K.'s inconsistent statements to the emergency room personnel and to the police.  On remand, a limiting instruction to the jury should be given that it is to consider evidence of T.K.'s inconsistent statements not as evidence of sexual activity or reputation but as evidence of the credibility of her testimony.

The portion of the judgment of the circuit court of Winnebago County finding defendant guilty of the offense of aggravated criminal sexual abuse is reversed, and the cause is remanded for a new trial on this charge.   

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded.

Reversed; cause remanded.

BYRNE, J., concurs.

JUSTICE O'MALLEY, specially concurring in part and dissenting in part:

I agree that a new trial is necessary because the issues instruction did not apprise the jury of the State's burden to disprove the defendant's affirmative defense that he reasonably believed T.K. was 17 years old or older.  However, upon further reflection prompted by the petition for rehearing, I must dissent from the anticipatory discussion of the admissibility of T.K.'s contradictory statements to emergency room personnel regarding whether she had sexual intercourse with anyone other than defendant within 72 hours of submitting to a rape kit.  Citing 
Grano
 as its sole authority, the majority accepts the defendant's argument that these statements are admissible "under the constitutional exception to the rape shield statute" to "impugn the credibility of T.K.'s testimony that *** she was 16 years old."  Slip op. at 11.

My first dispute is with the majority's interpretation of 
Grano
.  The majority states that 
Grano
 "held that the trial court improperly excluded evidence proffered by the defendant that the victim of an alleged sexual assault made prior inconsistent statements concerning sexual relations with adult men other than the defendant." 
 Slip op. at 12.  This is not correct.  The defense in 
Grano
 did not seek to introduce any "prior inconsistent statements" by the victim.  A statement by a witness is admissible as a prior inconsistent statement only if it has the tendency to contradict the witness's trial testimony.  
People v. Zurita
, 295 Ill. App. 3d 1072, 1077 (1998).  The defense in 
Grano
 sought to introduce testimony from other witnesses that the victim "made prior allegations of sexual activity with other men and that such activity never occurred."  
Grano
, 286 Ill. App. 3d at 287.  The defense proposed to do this through "three witnesses who would testify that the victim told them that she had sex with three other adult men, and three witnesses (the other adult men) who would testify that they never had sex with the victim."  
Grano
, 286 Ill. App. 3d at 287-88.  There was no indication in 
Grano
 that the testimony offered by the defense had the tendency to contradict the victim's trial testimony.  The court did not analyze the testimony as a prior inconsistent statement but as a prior false allegation of sexual activity.  See 
Grano
, 286 Ill. App. 3d at 288-89.                   

My second point is that if the majority, in citing 
Grano
, presupposes that the contradictory statements of the victim offered by the defense in this case will be admissible on remand as "prior inconsistent statements" simply because the contradiction in the statements might undermine T.K.'s credibility, the majority is mistaken.  T.K. made two out-of-court statements that contradicted each other, but, as far as the record shows, neither statement had the tendency to contradict her trial testimony.  Neither statement will be admissible on remand as a prior inconsistent statement unless it has the tendency to contradict T.K.'s trial testimony.

Last, I see no means available for using either of T.K.'s statements to attack her credibility other than as a prior inconsistent statement (provided, of course, that the statement would have a tendency to contradict her trial testimony).  The fact that T.K. made contradictory statements outside court is by itself no basis for a general assault on her credibility.  "In Illinois, it is well settled that the proper procedure for impeaching a witness' reputation for truthfulness is through the use of reputation evidence."  
People v. West
, 158 Ill. 2d 155, 162 (1994).  In the wake of 
West
, the appellate court has held that specific instances of untruthfulness are not admissible to attack a witness's believability.  See 
People v. Morrow
, 303 Ill. App. 3d 671, 680 (1999); 
People v. McGee
, 286 Ill. App. 3d 786, 796 (1997).  If the record on remand does not provide a basis for the admission of either statement as a prior inconsistent statement, the contradiction in the statements will remain a specific out-of-court instance of untruthfulness and, accordingly, inadmissible.